MONEYWEIGHT SCALE CO. v. TOLEDO COMPUTING SCALE CO.

(Circuit Court of Appeals, Seventh Circuit. January 3, 1911.)

No. 1,710.

1. PATENTS (§ 141*)—REISSUES—VALIDITY.

Authority to grant reissue patents is derived exclusively from Rev. St. § 4916 (U. S. Comp. St. 1901. p. 3393), and the commissioner goes beyond his jurisdiction if he grants a reissue for an invention other than the one disclosed and described in the original patent, which, by reason of inadvertence, accident, or mistake, is inoperative to secure the monopoly it shows on its face was intended to be secured.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 206–213; Dec. Dig. § 141.*]

2. PATENTS (§ 141*)—REISSUES.

The inadvertence of the solicitors of an applicant for a patent is his inadvertence, and, on the other hand, their erroneous judgment in submitting to the rejection of claims is his erroneous judgment, and he is estopped from presenting any of such rejected claims in an application for a reissue.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 211; Dec. Dig. § 141.*]

3. PATENTS (§ 141*)—REISSUES—INADVERTENCE.

Where none of the original claims presented by an applicant for a patent was adequate to cover the invention disclosed by the specification and drawings. acquiescence in the rejection of such claims is not an abandonment of the invention as an entirety, and the failure of his solicitors to submit adequate claims is an inadvertence which may entitle the applicant to a reissue.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 211; Dec. Dig. § 141.*]

4. PATENTS (§ 328*)—VALIDITY AND INFRINGEMENT—COMPUTING SCALE.

The De Vilbiss reissue patent, No. 12,137 (original No. 649,915), for a computing scale, is not invalid as departing from the original invention, and it also covers a true combination which produces an improved result and discloses invention. Also, held infringed.

Appeal from the Circuit Court of the United States for the Eastern Division of the Northern District of Illinois.

Suit in equity by the Toledo Computing Scale Company against the Moneyweight Scale Company. Decree for complainant (178 Fed. 557), and defendant appeals. Affirmed.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Appellee obtained against appellant a decree for an injunction and an accounting, by reason of infringement of reissue patent No. 12,137, July 28, 1903, to De Vilbiss, appellee's assignor, on an improved computing scale. 178 Fed. 557.

Assignments of error allege invalidity of the reissue, want of invention, aggregation, and noninfringement. Fig. 2 of the drawings is given in 178 Fed. on page 565. The original patent No. 649,915, May 22, 1900, drawings omitted, reads as follows:

"This invention relates to scales, and more especially to that class thereof known as 'price scales,' which employ a pendulum and are adapted to compute the total selling price; and the object of the same is to effect improvements in devices of this character, more especially improvements over my former patent, dated March 14, 1899, and numbered 621,297.

"To this end the invention consists in the details of construction hereinafter more fully set forth and claimed and as shown in the accompanying drawings, in which—

"Figure 1 is a side elevation of this scale complete. Fig. 2 is a similar view with the front plate of the casing removed, and hence showing a section. Fig. 3 is a vertical section on the line 3 3 of Fig. 2.

"Referring to the drawings by reference letters, A designates the scale beam, fulcrumed at a in the usual manner, as on a knife edge, and C is a second pivot or knife edge which in the present instance supports the standard, M, of the platform or table, R, although it will be clear that by a slight change the well-known pan could be substituted for the table without departing from the spirit of my invention. Nothing new is claimed for this much of the device.

"The letter A′ designates an auxiliary or tare beam connected and moving in unison with the main scale beam A, and on this auxiliary beam is mounted a weight, a′, adapted to be moved to counterbalance or offset the weight of the crock or receptacle for containing the matter being weighed. Said auxiliary beam preferably extends past the fulcrum, a, and is made as long as convenient in order to give as large a space as possible for each unit of weight, and to this end it is marked with graduations, as shown.

"The letter E, Fig. 3, designates bearings of any suitable character fast within the housing B. D′ are knife edges or pivots for said bearings, and D is a pendulum mounted thereon and hanging normally vertical within said housing, its body carrying a weight, J, of any kind and being adapted to swing outward through a slot, S., properly located in the side of the housing, as shown. Around said knife edges, D′, is a disk, D″, rigid with the pendulum and having therein at one side of and normally above the center a knife edge or pivot, N, from which a link or connection, F, leads to the inner end of the beam A, as shown, and from the diametrically-opposite side of this disk projects a screw, N′, carrying an adjustable counterpoise-weight, n′, to offset the weight of the link, F, by reason of the fact that it stands always opposite the knife edge, N, and hence increases and decreases in leverage as the link increases and decreases.

"The letter Z designates an upright cylinder containing mercury, oil, or other fluid agent sufficiently dense to impede movement therethrough, and Z′ is a piston rod led from any part, such as the scale beam, A, and having a piston, Z″, necessarily moving in the fluid agent within said cylinder, by which means vibrations of the scale beam, and hence of its connected parts, is impeded or prevented.

"H is a hand or index of any suitable light material and which is rigidly secured to the disk, D″, in a position to stand normally oblique to a vertical, such hand preferably having in its body a series of openings, H′, inscribed herein opposite thereto with the numerals '6,' '5,' '4,' '3,' etc., although it will be clear that a hand inscribed in any proper manner and co-operating with the contiguous parts will answer equally well. It will be obvious that the marked portion of the hand moves through the arc of a circle, and in the present instance I provide a graduated table, L, supported by the framework of the machine adjacent said portion of the hand and properly marked with several lines of figures to indicate the total cost of the article

being weighed; this cost being the product of the number of units, U (pounds), indicated also on the table, multiplied by the price per pound. as here indicated on the hand or index.  It will be obvious that fractions of a pound or fractions of a cent per pound can be indicated in the same way, as well as the totals thereof.  In order to counterbalance the weight of the hand, H, I provide a screw, h', projecting radially from the disk, D", diametrically opposite the index and carrying a counterpoise-weight, h".  It will be clear that these weights n' and h" gain and lose in leverage reciprocally with the link and index and, if necessary, may be adjusted to more accurately counterbalance the same.

"The operation of this improved scale is as follows:  The machine being properly set up and adjusted, let us suppose that a one-pound crock is placed on the table, R, in which it is desired to weigh three pounds of lard at six cents per pound.  The seller first adjusts the counterbalance weight, a', to '1' on the tare beam, A', or to any point where it will offset the weight of the crock; the proper point being indicated by the balance of the scale, at which time the index, H, will stand as seen in Fig. 1.  The lard is then placed in the crock, the table, R, and beam, A, descend, and through the link, F, the disk, D", is turned on its center D', thereby causing the index, H, to move over the table, L, until '3' in the units-line U is reached. Meanwhile the piston, Z", in the cylinder, Z, descends within the fluid and prevents undesirable vibrations of the index.  Opposite the uppermost opening, H', here shown in the index, is marked the figure '6,' indicating that price per pound, and my table is so arranged that when the index stands to indicate '3' units the operator may read through this opening the product of three times six, or eighteen, which is the total cost of the merchandise being sold.

"What I claim as new is—

"1. In a scale, the combination with the central pivot, a disk mounted thereon and having a pendulum hanging normally vertical and an index standing normally oblique, a link-pivot connected with this disk and standing normally above said central pivot, a screw projecting from the disk opposite the link-pivot, and a counterbalancing weight adjustable on this screw; of a table with which the index coacts, a beam mounted on a fulcrum, a pan or platform, and a link connecting said beam with the link-pivot, all substantially as and for the purpose set forth.

"2. In a scale, the combination with the housing having bearings, a disk having a central pivot mounted therein, a pendulum hanging normally vertical from the disk, an index standing normally oblique to this pendulum, a link-pivot connected to the disk and normally above its central pivot, screws projecting from the disk, and counterbalancing weights adjustable on such screws; of a beam mounted on a fulcrum, a pan or platform, and a link connecting the beam with the link-pivot, all substantially as described."

Application for reissue, filed November 16, 1901, was based on the inadequacy of the original patent (apparent on the face thereof) to secure the invention described and disclosed in the patent, and on the inadvertence of the attorney (apparent on the face of the patent and the proceedings to obtain it) in failing to present for allowance any claim that would cover the invention described and disclosed as the patentee's invention in the drawings and specification.

Between the granting of the original and the application for reissue, no intervening rights of any sort accrued.

The specification of the reissue was written afresh; but we agree with the Circuit Court and with appellant that this rewriting    unnecessary, that no new matter was introduced into the specification, and that the reissue claims may as well be read upon the original specification.

Claim 8 of the reissue is as follows:

"In a computing scale, the combination of a price-computing table, L, provided with graduations and numbers indicating the values of different quantities of commodities at different prices per pound, the disk or hub, D", provided with the knife edge trunnions, D', projecting from its front and rear sides and resting in supporting-bearings, E, the index hand, H,

rigidly secured at its lower end to the disk, D'', and at its upper end co-operating with the table, L, and provided with a series of numbers indicating prices per pound, the vertically-depending weighted pendulum, D, rigidly secured at its upper end to the disk, D'', the link-pivot, N, carried by the disk, D'', and normally standing at a point above the pivotal axis of the latter, means carried by the disk, D'', for counterbalancing the weight of the index hand, H, and link-pivot, N, the scale beam, A, fulcrumed near its outer end upon a suitable support at a, and connected at its inner end with the link-pivot, N, by the link, F, the platform, R, mounted on the beam. A, between the fulcrum, a, and the link, F, the tare beam, A', mounted on the scale beam, A, the poise, a', mounted on said tare beam, the dashpot. Z, and the piston. Z'', moving therein, and having the upper end of its rod, Z', connected to the scale beam adjacent the link, F; substantially as and for the purpose set forth.''

Other reissue claims are for combinations of smaller numbers of the same elements, sufficient to cover an effective computing scale of the particular type pictured and described in the specification, but without the dashpot and the tare beam or without one or the other.

Thomas F. Sheridan and Border Bowman, for appellant.

Edward Rector, for appellee.

Before GROSSCUP, BAKER, and SEAMAN, Circuit Judges.

BAKER, Circuit Judge (after stating the facts as above). Authority to grant reissues is now derived exclusively from the statute. R. S. § 4916 (U. S. Comp. St. 1901, p. 3393). And the commissioner goes beyond his jurisdiction if he grants a reissue for an invention (though conceded to be the invention of the applicant) which is not the same invention that was disclosed and described as the applicant's invention (not merely that lurked in the drawings or description of the machine as a machine) in the original patent, which, by reason of inadvertence, accident, or mistake, is inoperative to secure the monopoly it shows on its face was intended to be secured. McDowell v. Ideal Concrete Machinery Co. (herewith decided) 187 Fed. 814.

In this case the applicant originally said:

"I have invented certain new and useful improvements in scales; and my preferred manner of carrying out the invention is set forth in the following full, clear, and exact description, terminating with claims particularly specifying the novelty. * * * To this end the invention consists in the details of construction hereinafter more fully set forth and claimed and as shown in the accompanying drawings."

Then is given a description, following the reference letters of the drawings, from which any one skilled in the art could make and use the improved computing scale. Claim 8 of the reissue, by the same reference letters, simply covers the same improved scale.

A proposal had been made to tender claims for allowance that would be adequate to secure a monopoly of the invention disclosed and described in the specification as the invention of the applicant. The two claims allowed do not fulfill the promise. They are only for combinations of less than the total number of elements in the complete scale and are expressed in general terms. The original patent on its face was therefore inoperative to protect "the details of construction" which the specification had particularly pointed out and which

individualized the machine that appellee was manufacturing thereunder.

Did this inoperativeness arise from inadvertence, accident, or mistake? Twenty-seven other claims were presented for allowance during the prosecution of the original application, and the file wrapper shows that the solicitors acquiesced in their rejection. The inadvertence of his solicitors was the applicant's inadvertence, and might therefore be availed of by him, if it existed. On the other hand, his solicitors' erroneous judgment in submitting to the rejections is his erroneous judgment, and he would be estopped from presenting any of the rejected claims in an application for a reissue. Yale Lock Mfg. Co. v. Berkshire Nat. Bank, 135 U. S. 342, 10 Sup. Ct. 884, 34 L. Ed. 168; Corbin Cabinet Lock Co. v. Eagle Lock Co., 150 U. S. 38, 14 Sup. Ct. 28, 37 L. Ed. 989.

We have examined each of the 27 rejected claims and have failed to find one that would be adequate to secure a monopoly of the De Vilbiss computing scale, that would cover "the details of construction" in which the invention as an entirety resided. We think appellant has put the best foot forward in selecting for comparison with claim 8 of the reissue the following rejected claim:

"3. In a computing scale, the combination with the beam mounted on a fulcrum, the pan or platform, and a link; of the housing having a table provided with a single row of weight units and several rows of price totals, a normally vertical pendulum and normally oblique index hung on a common central pivot, the index having several price per pound figures coacting with the price-total rows on the table, a link pivot rigid with and normally above said central pivot and with which said link is connected, and means for counterbalancing the link pivot and link and the index, as and for the purpose set forth."

It will be observed that this rejected claim does not include even in general terms either the dash pot or the tare beam of the improved scale, while the elements that are common to the two are described in broad terms of construction and location in the rejected claim and in specific terms, limited to the construction and location particularly illustrated and described, in the reissue claim. And of course the acquiescence in the rejection of a combination of elements in general terms is not an abandonment of a combination of the same elements limited to specific construction and location, for in the specific construction and location may reside invention.

After the 27 claims were rejected, the solicitors responded:

"In view of the vicissitudes which have attended the prosecution of this case and of the repeated statements that claims 4 and 5 are considered allowable, claims 1, 2, and 3 (all that then remained of the 27) are erased in order to put the case in condition for immediate allowance."

This was an abandonment of the subject-matter of each of the rejected claims, but not of the invention as an entirety, for no claim corresponding to the specific details of that invention was ever presented in the original proceedings. The original patent and the file wrapper and contents were on their face sufficient proof that, if a claim adequate to cover the improved scale was ever drawn, it had been omitted, by accident in copying or otherwise, from presentation to the Pat-

ent Office. The original specification alone on its face was sufficient proof that, if a claim adequate to cover the improved scale was never drawn, the failure came from the lack of an attentive comparison of the submitted claims with the invention particularly pointed out in the specification. This was inadvertence. "lack of heedfulness or attentiveness," irrespective of the real competence or incompetence of the solicitors.

Was this inadvertence excusable? After the solicitors delivered the patent to their client, they could not be expected to give the matter any further attention. De Vilbiss was a layman and may be supposed to have been inexpert in construing patents. He may have rested on the assumption that his solicitors had procured a fully operative patent. How far such a reliance may go generally is not necessary to be determined in this instance. Here the situation is the same as if De Vilbiss had applied for the reissue the very hour the patent issued, for no intervening rights of any sort accrued.

Respecting the other reissue claims, it is sufficient to say that, while the original specification was notice of what the invention as an entirety was, the allowed claims were notice that the invention also covered combinations of less than all the parts; that none of the reissue claims corresponds with the subject-matter of any abandoned claim; and that no reissue claim is broader than the allowed claims.

Concerning the defenses of want of invention, aggregation, and noninfringement, we approve and adopt the opinion of the Circuit Court.

The decree is affirmed.