### MINER v. T. H. SYMINGTON CO.

(Circuit Court of Appeals, Seventh Circuit. October 5, 1915. Rehearing Denied January 14, 1916.)

#### No. 2169.

1. PATENTS ⬦⟶328—VALIDITY AND INVENTION—DRAFT RIGGING FOR RAILROAD CARS.

  The Emerick patent, No. 693,643, for a draft rigging for railroad cars, was not anticipated, and although of narrow scope discloses patentable invention, in that the device affords more simple, easy, and efficient means for removal of the parts for the making of repairs than those of the prior art; also *held* infringed.

2. PATENTS ⬦⟶73—ANTICIPATION—PRIOR PATENT.

  Whether an alleged anticipating patent was a part of the prior art depends, not on priority of invention, but on whether the invention of the later patent was made prior to the issue of the first patent.

  [Ed. Note.—For other cases, see Patents, Cent. Dig. § 64; Dec. Dig. ⬦⟶73.]

Appeal from the District Court of the United States for the Eastern Division of the Northern District of Illinois; Arthur L. Sanborn, Judge.

Suit in equity by the T. H. Symington Company against William H. Miner. Decree for complainant, and defendant appeals. Affirmed.

For opinion below, see 216 Fed. 198.

Appellee brought suit to restrain infringement of the four claims of the Emerick patent, No. 693,643, for draft rigging for cars, granted February 18, 1902, on application filed May 24, 1901. The object of the invention, as claimed by the inventor, was to provide a draft rigging device wherein the coupling bar could be easily replaced. The art is one in which convenience and speed of repair are of consequence. The earlier art abounded in devices which required the removal of the draft rigging from its supports. Emerick claims to have invented a draft rigging from which the coupler bar may be removed and replaced, without disturbing the other parts, by merely removing the lynchpin and its keeper—a process requiring negligible time and labor. In doing this, he claims to have attained other desirable results. The buffer springs and followers can also be replaced by merely removing the bottom plate, without displacing the drawbar and yoke. Should the yoke require removal or adjustment, it can be slid out after the key or lynchpin is withdrawn. These advantages the patentee claims he was the first to provide.

Claims 1 and 3 sufficiently set out the invention. They read as follows, viz.:

"1. A draft rigging for cars comprising side sills, independent counterpart castings mounted upon the opposed sides or faces of said sills, said casting provided with shoulders and having co-operating longitudinally extending seats or ways in the opposed faces thereof, follower plates arranged to be received between said castings and operating between said shoulders, the ends of said plates extending into and working in said seats or ways, springs interposed between said plates, a draft yoke loosely seated between said castings and arranged to straddle said plates, a coupler arm and a removable key for connecting said coupler arm to said draft yoke and sills, as and for the purpose set forth."

"3. A draft rigging for cars comprising side sills having elongated longitudinally extending slots or openings, counterpart castings mounted on the opposed faces of said sills, a coupler arm having an opening therethrough, a draft yoke loosely mounted between said castings and having the sides thereof received in longitudinal seats formed in the opposed faces of said counterpart castings, a locking key or pin passing through said coupling arm and draft yoke and having its ends received in the elongated slots in said sills, and yielding means interposed between said draft yoke and casting, as and for the purpose set forth."

The patent is of the type in which the yoke is arranged horizontally and not vertically. Claim 1, it will be seen, calls for (a) side sills; (b) independent counterpart castings mounted upon the opposed sides or faces of said sills; (c) said castings provided with shoulders, (d) and having co-operating longitudinally extending seats or ways in the opposed faces thereof; (e) follower plates arranged to be received between said castings and operating between said shoulders; (f) the ends of said plates extending into and working in said seats or ways; (g) springs interposed between said plates; (h) a draft yoke loosely seated between said castings and arranged to straddle said plates; (i) a coupler arm; (j) a removable key for connecting said coupler arm to said draft yoke and sills, as and for the purpose set forth.

Claim 3 contains the following elements, viz.: (a) Side sills having elongated longitudinally extending slots or openings; (b) counterpart castings mounted on the opposed faces of said sills; (c) a coupler arm having an opening therethrough; (d) a draft yoke loosely mounted between said castings and having the sides thereof received in longitudinal seats formed in the opposed faces of said counterpart castings; (e) a locking key or pin passing

through said coupling arm and draft yoke, and having its ends received in the elongated slots in said sills; and (f) yielding means interposed between said draft yoke and casting, as and for the purpose set forth.

Figs. 1, 5, 6, and 7 of the drawings are here reproduced:

Reference signs 8 and 9 show the car sills upon which the draft-rigging is supported; 10 and 11 are counterpart castings attached to the inner faces of the sills, opposite each other. On the inner opposed faces of 10 and 11 are formed co-operating guide ways 13 and 14, each adapted to receive a leg 15, 16 of the U-shaped draft yoke, the outer ends of which legs are slotted to receive the key 17 which passes through a slot in the coupling bar and into ample rest slots in the car sills. Necessarily the several slots must be in alignment with each other. The keepers 32 and 33 prevent displacement of the key. It will be seen that the coupler arm 20 is detachably connected with the draft yoke. Interposed between the end of the coupler arm and the web 21 of the yoke is placed a buffer spring of the usual kind. At either end of this spring are blocks or plates 22 and 23, termed "followers" in the patent, bearing against shoulders formed in the casting, which plates are connected by rods upon which they loosely slide and upon which the coiled spring is mounted. The rods are not shown in Figs. 6 and 7, and are, so appellee

claims, not essential parts of the draft rigging. These parts constitute a connected frame adapted to be received between the castings 10 and 11 and held in place by flanges 28 which may be made removable to afford access to the springs 26, 27. The plate 23 takes bearing against web 21 of the draft yoke, and plate 23 bears against the inner end of the coupler bar. "From the foregoing description it will be seen that when a pull is exerted upon the coupler arm the buffer plate 23 will take bearing against the shoulders 30 of the castings 10, 11, which thereby constitute a stop for said buffer plate, and the pull exerted upon the coupler arm 20 is transmitted through the draft yoke and is imposed upon the buffer plate 22, which being movable and loosely mounted upon the bolts 24 is drawn yieldingly toward the plate 23, thereby imposing a compression upon the springs 26, 27. Similarly in case of an endwise impact upon the coupler arm—as when two cars come together, for instance—the buffer plate 22 strikes against the shoulder 31 (see Fig. 1) of the castings 10, 11, and the endwise projection of coupler arm 20 forces the buffer plate 23 toward plate 22 and imposes a compressive tension upon the springs. In this manner the parts are relieved of shock or jar. If desired, the ends of the key or pin 17 may be retained in place and said pin or key prevented from working out of place by means of keepers 32, 33."

Appellant in his answer alleges invalidity of the patent in suit, denies infringement, and sets up various alleged anticipating patents, and particularly that of patent No. 673,419 issued May 7, 1901, to John J. Byers on his application filed April 21, 1900, for a draft rigging, under which patent appellant claims to be manufacturing. Reference to such of these prior art patents as may be deemed necessary will be made in the opinion.

The District Court sustained the patent, narrowly construed, found infringement, and decreed an accounting. From that decree appellant brings this appeal.

George I. Haight and Charles C. Linthicum, both of Chicago, Ill., for appellant.

Melville Church, of Washington, D. C., and Edwin F. Samuels, of Baltimore, Md. (Dyrenforth, Lee, Chritton & Wiles, of Chicago, Ill., and W. Stuart Symington, Jr., of Baltimore, Md., of counsel), for appellee.

Before BAKER, KOHLSAAT, and MACK, Circuit Judges.

KOHLSAAT, Circuit Judge (after stating the facts as above). [1] There are no new elements in appellee's device. It must depend entirely on the arrangement of its parts. What it particularly claims to accomplish is convenience in getting at the coupler bar and spring parts in case of breakage or other causes for access to them. Manifestly such a patent must be narrow. In the draft rigging art slight advances, especially such as are time-saving or convenient, may in the multiplicity of the applications be of considerable moment. Thus, if it be true that the device of the patent in suit provides a simple, easy, and efficient means of making repairs to the coupler-bar and other accessories of the draft rigging, it may well be deemed invention so far as utility is concerned. Appellee's description and claims seem to be somewhat obscurely worded. The claims all mention longitudinal seats or ways between the faces of the castings on the inner sides of the sills. The drawings show these face castings to be provided with top and bottom flanges which, as shown in Fig. 5, form top and bottom supports to the so-called followers 15 and 16. Yet the patentee says these form no part of the device, but serve to hold it in place. Manifestly, without these

the followers, springs, and other parts of the draft rigging would not remain in position. The lower flanges, at least, must be removed before the plates and springs can be taken out. Appellant contends his device lacks these flanges. They are not included in the claims of the patent in suit. Any other supporting means, it is claimed, answers the purpose. If the flanges, especially the lower one, were not removable, the object asserted by the patentee would not be attained. It is the inner faces of the castings which appellee claims constitute the guideways. Each face has four shoulders, one in each corner of the casting constituting one of the faces. The length of the guideway must be limited to the longitudinal spaces between these. Thus the springs and followers and draft strap which straddles them must move between the shoulders. In a sense this is a way through which the draft strap moves and a way through which the followers move. This latter seems to be framed by the draft strap. Both this latter strap and the follower plates extend into the longitudinal space between the shoulders, and this is probably meant by the statement of the claims: "The ends of said plates extending into and working in said seats or ways." Appellant's expert Harris says the seats or ways are formed by upper and lower flanges of the castings and the vertical webs thereof. In view of the statement, in the specification of the patent in suit, that the flanges are no part of the device, but only supports, and the absence of anything in the claims covering them, they need not be deemed essential features.

Considering the plethoric condition of this art, the advance made in convenience and simplicity, the easy way in which the draft strap may be removed by withdrawal of the key, together with the presumptions attaching to the grant, we hold that, in the absence of anticipating patents in the prior art, the patent would be sustainable for its specific arrangement and clear equivalents thereof. There are a number of patents in the prior art, cited by the appellant. Of these we may consider briefly the following, viz.: Timms patent, No. 532,115, granted January 8, 1895, for draft attachment; Mitchell patent, No. 517,146, granted March 27, 1894, for draft rigging; Poor patent, No. 341,601, granted May 11, 1886, for a drawbar; Crook patent, No. 436,753, granted September 16, 1890, for a drawbar; Clark patent, No. 497,264, granted May 9, 1893, for draft attachment; Brown patent, No. 515,044, granted February 20, 1894, for drawbar mechanism; Tomlinson patent, No. 545,555, granted September 3, 1895, for draft rigging; Pilcher patent, No. 616,965, granted January 3, 1899, for draft rigging (this patent was not set out in the answer); Byers patent, No. 673,419, granted May 7, 1901, for draft rigging.

Timms uses links and keys, instead of a yoke and key, located outside the sills. It has followers and ways therefor. It has integral flanges extending from its cheek plates, which inclose the followers. It is not adapted to receive a horizontal yoke, and provides no means for removing the draft gear in parts, but only as a whole. It fails to accomplish what Emerick was seeking to and did provide as an aid to repairs.

Mitchell's horizontal yoke is bolted to the drawbar. It uses bolts, instead of a key. These it becomes necessary to remove, and, since they are apt to be bent by rough usage, this is often difficult. Even then the coupler cannot be withdrawn horizontally, but must drop unless held. No counterpart castings are used, but bridge castings in form, whereby the sills are tied together. The members of the rigging cannot be removed separately, and the device likewise lacks Emerick's idea.

Poor's patent shows a vertical yoke. Because of this fact the springs cannot be removed independently of the yoke and drawbar. It lacks the cheek plates, ways for the yoke, and the horizontal yoke. Its drawbar and yoke are connected by flanges and rivets on the yoke. Its parts are not removable, without knocking down the whole draft gear structure, and therefore it does not anticipate the Emerick invention.

Crook shows a draft gear of the tail pin type. It has no convenient means of removing the coupler bar, the springs, the followers, or the horizontal yoke. It lacks Emerick's conception of a convenient, simple arrangement of parts which makes possible ready access to the device.

Clark's patent is for a draft gear of the vertical yoke type. It has independent cheek castings, but has no longitudinal seats or ways in its castings for the yoke, which has to be supported on followers and drawbars. The bolt connecting the coupler and yoke is located under the floor and removed with difficulty. Emerick's key and its application to its various slots and rests seems to require that the yoke be horizontal. The difference between Emerick and Clark is greater than the mere difference between a pin and a bolt.

Brown's device is entirely different in principle from Emerick. It has no horizontal yoke, or cheek plates, or ways for the yoke and followers, and therefore need not be further discussed.

Tomlinson uses links which act as tension members, instead of a yoke, which are supported on the ends of the keys. He has no cheek plates, nor ways for the yoke. Two followers of different designs are used. The method of operation is different from Emerick, and the device lacks the arrangement and idea of the patent in suit.

The Pilcher patent was introduced in evidence somewhat irregularly. Its yoke is riveted to its drawbar and received in threaded apertures formed in the followers, through which its arms pass. Thus the yoke cannot be separated from the followers and drawbar without the use of special tools. Its cheek plates are not provided with longitudinal or horizontal ways for the yoke. Stops in the cheek plates engage the followers, and otherwise the arrangement is such as to miss Emerick's conception.

The nearest approach to Emerick is that of Byers. As above noted, appellant claims to be operating under this patent. It discloses in a unit structure much of what Emerick contends for. It was issued 17 days before Emerick filed his application. Appellant, however, does not use the Byers structure, but does use the two counterpart castings

of Emerick. There is evidence to show that Byers' draft rigging has practically never been used.

It is contended that there is no invention in making in two parts that which was before made in one. Byers never contemplated the counterpart casting, either in his present patent or in his two subsequent patents. His present device could not be cut in two and produce Emerick's counterpart cheeks and other features of the patent in suit. It would require readjustment. The difficulty of alignments would make it practically impossible. There are many other distinctions. We need not, however, pursue these further. The District Court found that Emerick's invention antedated the Byers issue. This finding was based upon the evidence of Emerick, Wright, and Darrach. Emerick testified he made the models of his invention as far back as March, 1901. Both Wright and Darrach testify that Emerick disclosed his invention to them in 1899, and that it was that of the patent in suit. The District Court was convinced by this evidence, which was heard in open court. We do not feel at liberty to doubt that finding. It would have been more satisfactory, could Emerick have produced his models or drawings made in 1899; but he did not preserve the drawings and has lost the model. This we find no reason to question. The evidence is sufficient under the authorities to support the claim of the patentee. Bates v. Coe, 98 U. S. 31, 25 L. Ed. 68; Eck v. Kutz (C. C.) 132 Fed. 758.

[2] The question is not one of a priority of invention but of invention made prior to the issue of the patent to Byers. Union Typewriter Co. v. Smith et al. (C. C.) 173 Fed. 291; Bates v. Coe, supra, and cases cited in Turner Brass Works v. Appliance Co. (C. C.) 203 Fed. 1001. We are satisfied from the evidence that appellee has made an invention—very narrow, more than usually the case—but nevertheless entitled to protection as an addition to the draft rigging art, especially in the matter of its adaptability to convenient access for repairs.

We find no difficulty in discovering infringement on the part of appellant. It has employed the essential features of Emerick. There are several other matters urged which we do not deem it necessary to consider.

The decree of the District Court is affirmed.