WIREBOUNDS PATENTS CO. et al. v. CHICAGO MILL & LUMBER CO.

(District Court, N. D. Illinois, E. D. May 23, 1916.)

No. 174.

1. PATENTS ☞328—VALIDITY AND INFRINGEMENT—WIRE-BOUND BOX.

The Inwood & Lavenberg reissue patent, No. 12,725 (original No. 799,854), for a wire-bound box, is within the invention of the original patent, discloses patentable invention, and as covering a highly useful and successful box, which was the first of its kind, is entitled to a fair range of equivalents; also *held* infringed.

2. PATENTS ☞135—REISSUES—GROUNDS OF REISSUE.

The statute providing for reissues is not to be so construed as to deny a reissue, where by the inadvertent use of a limiting word the original patent does not protect the real invention.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 198.]

3. PATENTS ☞328—VALIDITY AND INFRINGEMENT—WIRE-BOUND BOX.

The Flora patent, No. 907,586, for a wire-bound box, is for an improvement only, and, while valid, is to be narrowly construed; as so construed, *held* not infringed.

In Equity. Suit by the Wirebounds Patents Company and the Wirebounds Corporation against the Chicago Mill & Lumber Company. On final hearing. Decree for complainants in part.

Dyrenforth, Lee, Chritton & Wiles, of Chicago, Ill. (Charles C. Linthicum, of Chicago, Ill., Laurence A. Janney, of Boston, Mass., and Dunne & Murphy, of Chicago, Ill., of counsel), for plaintiffs.

W. C. Gilbert, of Chicago, Ill. (Arthur M. Hood, of Indianapolis, Ind., and Edward Rector, of Chicago, Ill., of counsel), for defendant.

SANBORN, District Judge. Infringement suit, begun January 20, 1914, on the Inwood & Lavenberg reissued patent, No. 12,725, dated November 26, 1907, original No. 799,854, applied for October 17, 1904; also on the patent to Ellsworth E. Flora, No. 907,586, dated December 22, 1908, applied for December 4, 1905. Defenses set up are invalidity of the reissue, as broadening the original, invalidity, and noninfringement.

The controversy relates to wire-bound boxes made by complicated and elaborate machinery, and the business is a very important and rapidly growing one. Plaintiffs own 29 patents on box-making machinery and 12 on the boxes or box blanks. Plaintiffs' 36 licensees sold 60,008 boxes in 1906 and 9,652,604 in 1914. They are used mainly for shipping small packages in some 851 different industries.

Defendant is licensee of the Greenstreet Folding Box Machine Company, and there are 6 other licensees. Competition is quite active. Plaintiffs and the Greenstreet Company are the only makers of wire-bound boxes in this country.

The box material (except cleats) is thin veneer, and utilizes much material which would otherwise be wasted, and which is of inferior quality for many other purposes. The main parts of the box consist of 4 veneer blanks for the top, bottom, and sides, bound together, 8

cleats with wires attached to the blanks and cleats by staples, and of the box ends, which are fastened to the inner surfaces of the cleats. All these parts are turned out by machines. Plaintiffs' expert thus describes the boxes (except ends):

"(1) The foldable box blank is wire-bound; that is to say, the different sections of which the blank is composed are united together by binding wires, and in the completed box the ends of these binding wires are connected together, so as to circumferentially bind the whole box together, this being the significance of the wire-bound characteristic of the box.

"(2) The box blank comprises four sections, which are independent of each other, except for the uniting wires, and each of these sections comprises side sheet material and two cleats secured thereto, and in the completed box each of these four side sections has the capacity of movement longitudinally relatively to the adjacent sections, without disrupting the integrity of its own elements, consisting of the sheet material and the two cleats.

"(3) The sheet material constituting the sides of the box projects beyond the cleats sufficiently to enable the sheets to overlap each other, so as to constitute a tight box.

"(4) The sheets are straight-edged, thus not only contributing to the tight joints, but also tensioning the wires.

"(5) The tensioning of the wire thus obtained not only holds the four sides of the box closely and tightly together, but it also has the important effect of utilizing the lateral flexibility of the wire, in permitting the side sections to move relatively to each other, while at the same time utilizing the strength of the wire in resisting any distortion of the box under diagonal strains.

"The ultimate strength of the Inwood & Lavenberg box is dependent upon the wires. Owing to the tensioning of the wires at the corners of the box, this strength is utilized to its full capacity. This will be readily understood by reference to an ordinary nailed box. When such a box is subjected to diagonal strains, the tendency is to distort and disrupt the box, either by pulling out the nails or by disrupting the box material at the nail holes. This is avoided in the Inwood & Lavenberg box, because the wires themselves withstand the strains, and the box can be distorted to the breaking point without disrupting the union between the side material and the cleats, because the side sections can slip on each other, leaving the strains to be borne by the wires. Consequently the box can be materially distorted, and nevertheless, after the distorting strain has ceased, the box can resume its original shape and still be an efficient carrier for its contents. Owing to the tension of the wires at the corners, the box is stiffened in the first instance, so that ordinary strains will be withstood, without any distortion of the box; and then, if the strain is increased sufficiently to distort the box, the wires will hold the box together, and the side sections will slide without disrupting."

The box ends are fastened to the inside of the side and bottom cleats, but not to the top. The two claims in suit, one from each patent, are as follows, the word "step-mitered," in parenthesis, having been included in the original Inwood & Lavenberg patent, but omitted in the reissue.

"1. A wire-bound foldable box blank, comprising, in combination, a plurality of straight-edged sheets, wires connecting the sheets in longitudinal series and extending the full length of the series, and cleats formed with rabbeted mutually engageable ends, the wires, sheets, and cleats being stitched together, and the cleats being in end-to-end spaced relation, the whole being constructed and arranged to cause the rabbeted adjacent cleat ends, in the operation of folding the blank, to engage with each other and lock adjacent sheets against relative sliding, and cause one sheet to overlap the end of the adjacent sheet at box corners."

"1. A wire-bound foldable box blank, comprising a plurality of straight-edged sheets, wires secured to and connecting said sheets, and (step-mitered) cleats secured to said sheets to terminate short of edges of the latter a dis-

tance equal or approximately equal to the thickness of a sheet, whereby, when folded at a right angle, the end of one sheet overlaps the end of an adjacent sheet."

[1] *Validity of Inwood & Lavenberg Claim.* Aside from the question of reissue, as to this patent, like that in question in the recent case of Miner v. T. H. Symington & Co. (in this circuit) 229 Fed. 730, C. C. A. 140, there are no new elements in it, and its validity depends entirely upon the arrangement of parts. Such arrangement combines the parts in a new way. The result is beneficial and highly useful. The box is flexible, elastic, strong, light, has proved very successful, and was the first of its kind. If it did not actually create the wire-bound box industry, certainly it was a most important factor. Were the patent merely a paper one, there might be doubt of its validity; but, having been instrumental in founding a large industry, it should be sustained, and is entitled to a fair range of equivalents.

In this construction the particular shape of the four cleats at each end is not vital. In the original patent the claim required them to be step-mitered at the ends, so as to give greater strength to the box, and enable it to keep its square shape. Novelty, however, did not consist in the shape of the cleats, but the bringing together of cleats, sides, top, bottom, ends, and wires to make a practical, efficient, strong, light structure, in which the ends serve to brace it and prevent crushing, rendering the particular shape of the cleat ends where they touch each other less important in preventing perpendicular or horizontal movement of the parts upon each other. Thus there was no reason for limiting the original claim to step-mitered cleat ends, and the reissue did not change the real invention, which did not consist of the particular form of the cleats, but of the bringing together of all the elements mentioned, having the qualities referred to.

[2] The reissue is valid under Topliff v. Topliff, 145 U. S. 156, 12 Sup. Ct. 825, 36 L. Ed. 658. While the original may not have been technically inoperative or invalid by reason of the patentees having failed to claim the invention illustrated by the drawings showing the cleats in a step-mitered form, yet it was so limited as to be practically useless, while the reissue secured the real, meritorious invention. The statute providing for reissues would be lamentably incomplete, if it should be construed not to reach and relieve such a mistake as this, where the claim, by the inadvertent use of a limiting word, does not cover the real invention. Moneyweight Scale Co. v. Toledo Computing Scale Co., 187 Fed. 826, 109 C. C. A. 586.

[3] *The Flora Patent.* Since the Flora disclosure practically adds to Inwood & Lavenberg only the feature of rabbeted cleat ends designed to brace the structure, so as to prevent lateral sliding of parts, the foregoing discussion would tend to show the addition of an immaterial element only. It may, however, be narrowly sustained, though not infringed, as embodying an improved, more compact, and stronger box.

*Infringement.* From the exhibits of defendant's box introduced by plaintiffs, it appears that their construction differs in some respects from both patents in suit, particularly in that they employ a mortise and tenon joint at the cleat ends, instead of either step-mitered or rab-

beted forms. It also appears from these exhibits that all the sheets forming the sides, top, and bottom do not terminate "short of edges" of the cleats. Some of them do so, and some do not. It is true, however, that defendant has practically adopted the Inwood & Lavenberg construction, particularly in Exhibits 31 and 33. While the fact that an invention is meritorious and successful affords no presumption whatever that defendant uses it, and infringement must clearly appear, the proof shows that defendant makes and sells substantially the Inwood & Lavenberg box.

Both patents are held valid, and the reissue infringed. The Flora patent is not infringed. Plaintiffs should have a decree, without costs; each party to pay the disbursements incurred by them respectively.