22 C. C. P. A. (Patents)

### In re MURRAY.

Patent Appeal No. 3475.

Court of Customs and Patent Appeals.
May 27, 1935.

652

Usina & Rauber, of New York City (D. Anthony Usina, of New York City, of counsel), for appellant.

T. A. Hostetler, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

GRAHAM, Presiding Judge.

The appellant obtained a patent from the United States Patent Office, No. 1,746,-272, on February 11, 1930, upon an application filed June 18, 1924, serial No. 720,734. On January 30, 1932, an application was made by appellant for a reissue of said patent, which is the subject-matter here involved. Claims 1, 2, and 3 of the reissue application were copied

from the patent, were the only claims in the patent, and were duly allowed herein. Claims 9 to 16, inclusive, and claim 7 of the reissue application, were not contained in the patent. Said claims 9 to 16, inclusive, were denied by both tribunals in the Patent Office. Claim 7 was denied by the Examiner, but was allowed by the Board of Appeals.

The subject-matter of the patent and of this application is a heat-conducting unit to be used in boilers and heaters and boiler walls. In the patent, the gist of the invention is thus described: "According to Fig. 1 the boiler wall is provided with a lining or screen comprising tubes 1 with flanges 2 which are of zigzag shape so as to provide an extended width of surface within a comparatively short space between the tubes; the edges of the flanges from adjacent tubes being overlapped and hooked into engagement with each other so as to hold them close together in spite of distortion under heat. Back of the screen thus formed is an ordinary wall which may, for example, be made of refractory bricks 3 and insulating tiles 4 held by a sheet steel casing 5."

In addition to the tubes with flanges of zigzag shape, the patent also describes other forms, as follows: "Instead of getting the extended surface by use of a single flange member as in Fig. 2, it may be obtained by using a number of such members separately fastened to the tube. See Figs. 3 and 4. Here the tube has a number of rods 9 extending lengthwise and located at intervals around the outside of a portion of the tube. The same arrangement may be repeated at the diametrically opposite portion of the tube. The rods 9 may be of rectangular or other cross-section, instead of the round shape shown, and of differing dimensions, and they may be united to the tube in various ways."

Drawings showing the three forms of flanges are, in the patent, shown as figures 1, 2, and 3.

In the reissue application, three new drawings were added—figures 5, 6, and 7. Figure 5 shows rods, as in figure 3 of the patent, but covering one-half of the surface of the tube. Figure 6 shows the use of the type shown in figure 3 of the patent, with rods applied to one-fourth of the circumference of the tube, and having the tubes in actual contact in a furnace wall. Figure 7 shows the

entire surface exposed to the fire covered with rods, forming a wall, with the flanges of adjoining tubes in contact.

In the reissue application, additional language is inserted describing the forms represented by figures 5, 6, and 7, as follows:

"Where the described arrangement of rods is to be repeated, as stated above, they should cover the entire semi-circumference of the tube which is exposed to the heating gases. Fig. 5 illustrates such a tubular unit. Such units when erected into a lining or wall as in Fig. 7 make contact with one another along the rods 9 at the extreme right and left, with all the rods exposed to the heating gases. * * *

"In both Figs. 6 and 7 the rods 9 are distributed over substantially the entire exposed surface of the wall and act to catch and retain a portion of the ash from the burning fuel. The cooling effect of the water serves to cause a deposit of such ash. The narrow spaces between the rods 9 retain the deposit of ash and thus provide a refractory curtain between the water cooled surface and the flame.

"The rounded or undercut shape of the rods is particularly suited to anchor the ash. There is thus maintained a shield of refractory material of a thickness automatically regulated by the balance between the temperature of the water within the tubes and that of the flame and which will generally be incandescent and serve to maintain the intense combustion desired, while generating steam and thus taking off heat at the rapid rate which is characteristic of this Murray type of boilers. * * *

"The irregular shapes of the projections which are welded to the tubes in Figs. 1 and 2 are also adapted to accumulate a coating of refractory material and to anchor it to the face of the wall, though not so efficient for this purpose as the rods of Fig. 3."

For purposes of comparison, claims 1 and 2 of the patent, and rejected claims 9 and 13 of the reissue application, are given:

"1. A heat conducting unit for boilers constituting a separate and complete article of manufacture and comprising a long, small-diameter, thin-walled, steel boiler tube adapted to carry water with a longitudinal flange extending the full length of the tube and adapted for exposure to heating gases, said flange having an exposed side face which is uneven and is of greater developed width than the projected width of the flange itself so as to present an extended surface to the heating gases, the tube having a continuous wall of uniform thickness throughout its circumference and the flange being a separately formed piece welded at one edge to the outer face of the tube and having its other edge free.

"2. The heat conducting unit of claim 1, the flange being a strip of sheet metal of uniform thickness and zig-zag cross-section."

"9. A heat conducting unit for boilers or heaters, said unit constituting a separate and complete article of manufacture and comprising a long, small-diameter, thin-walled steel tube adapted to carry fluid and a plurality of outward projections on said tube adapted for exposure to heating gases, said projections having narrow spaces between them and overlying at least a substantial part of the circumference of the tube."

"13. The combination of a plurality of heat conducting units for boilers, separate from but adjacent to each other to form a hollow part carrying water and exposed in operation of the boiler to an excessive temperature, said part having a vertically extending surface and having means extending over substantially the entire length of the exposed surface adapted to catch and retain refractory material, the cooling effect of the water serving to cause a deposit of such material on said surface and said retaining means serving to hold the same."

The Board of Appeals was of the opinion that figures 5, 6, and 7 of the application, and the description and functions thereof added to the specification, disclosed new matter not found in or disclosed by the patent; that, under the rules of the Patent Office in force at the time of issuance of the patent, the patentee was not entitled to claim more than a generic claim and one species in his patent; that claims 2 and 3 of the patent are specific to the species shown in figure 1 of the patent; that claims 9 to 12, inclusive, of the reissue application, are specific to the species shown by figure 3 of the patent, and such claims are therefore alternative to claims 2 and 3 of the patent; that claims 13 to 16, inclusive, involve the uses

of units shown by figure 3 of the patent and figure 5 of the application; that, inasmuch as appellant could have obtained a patent for but one species of his invention under the law as it existed at the time his patent issued, his representatives may not now successfully contend that he failed to obtain a patent upon other species, through "inadvertence, accident, or mistake," as provided in Rev. St. § 4916 (35 USCA § 64); and, finally, that claims 9 to 16, inclusive, are not for the same invention disclosed by the "original application."

Rule 41 of the United States Patent Office, at the time of the application for and issuance of appellant's patent, was as follows: "41. Two or more independent inventions cannot be claimed in one application; but where several distinct inventions are dependent upon each other and mutually contribute to produce a single result they may be claimed in one application."

Thereafter, on June 31, 1930, said rule was amended by adding thereto the following language: "Provided that more than one species of an invention, not to exceed three, may be claimed in one application if that application also includes an allowable claim generic to all the claimed species. In the first action on an application containing a generic claim or claims and claims to more than one species thereunder the examiner, if he is of the opinion after a complete search that no generic claim presented is allowable, shall require the applicant in his response to that action to elect that species of his invention to which his claims shall be restricted if no generic claim is finally held allowable."

 This added language still forms a part of the rule and was in effect at the time of the filing of the reissue application here involved. It is well-settled law that the reissue statute, Rev. St. § 4916 (35 USCA § 64), was and is a provision intended to give to an inventor the full benefit of his invention, when, by inadvertence, accident, or mistake, and without any fraudulent or deceptive intention, he has imperfectly disclosed or claimed his invention in the Patent Office. A reissue must be limited to the same invention, and new matter may not be introduced into a reissue specification. In re Cogswell, 48 F.(2d) 402, 18 C. C. P. A. (Patents) 1136; In re Mur-

ray, 64 F.(2d) 788, 20 C. C. P. A. (Patents) 1046; Topliff v. Topliff et al., 145 U. S. 156, 170, 12 S. Ct. 825, 36 L. Ed. 658.

 It is quite evident from an inspection of the patent and its claims that the board did not err in its finding that the appellant had introduced new matter into his reissue application. Figures 5, 6, and 7 were and are not justified by any disclosure made in the original application and patent. Figure 5 represents a species of boiler tube unit which has upon its outer surface, covering half of the circumference, continuously, 13 rods welded to the outside of a seamless tube. In the quoted portion of the specification in the patent, the inventor specified that there might be a species, as illustrated by figure 3 of the patent, with "a number of rods 9 extending lengthwise and located at intervals around the outside portion of the tube. The same arrangement may be repeated at the diametrically opposite portion of the tube." There is no disclosure in this language, or elsewhere in the patent, of the idea now presented through said figure 5. Figure 6 of the specification in the present reissue application shows a wall composed of tubes presenting flanges of the type shown by said figure 3 over almost the entire surface of said tubes which is exposed to the fire, while the tubes themselves are in direct contact with each other throughout their entire lengths. Figure 7 shows a wall composed of tubes, as shown in the new figure 5, presenting flanges over their entire surface exposed to the fire, and with the tubes in contact with each other through these rounded flanges.

All this is new and not disclosed by the patent. The new function which the appellant has described for these wall structures, namely, the retaining of ash from the combustion, has no basis in the original patent or application therefor.

 We are unable to discern wherein there is any showing made in this record that the disclosure and claiming of the subject-matter now attempted to be incorporated in the reissue was omitted from the original application by inadvertence, accident, or mistake. It may be true that the full force, significance, and scope of the patent may not have been apparent to the patentee or his representatives or

solicitors until a recent date, but it can hardly be said that the reissue statute was intended to permit the reissuance of a patent to include matters evidently not intended to be incorporated in the original application, which, perhaps, have been suggested by improvements in the art which have occurred since the date of issuance of the original patent. In other words, the reissue statute, in our opinion, was not enacted for the purpose of correcting errors of judgment or supplying inventive concepts which have originated since the original patent was issued and applied for.

Again, at the times the original application was filed and patent issued, Rule 41 of the Patent Office was construed by the office to permit but one species of an invention to be claimed in an application, the applicant being entitled to make a general claim and to specifically claim one form or species of his invention. While this does not appear from the language of the rule itself, the language therein being "two or more independent inventions," the construction of this rule may be more fully gathered from the amendment to the rule which we have heretofore quoted, by which it was provided that as many as three species of an invention might be claimed in the same application.

This rule, so construed, was in force at the time of the issuance of Murray's patent. It therefore appears that at the time this patent was issued, and at the time his application therefor was filed, the patentee was restricted to one generic claim and one specific form of his invention. He elected to claim the species designated as figure 1, that is, a boiler wall strictly composed of tubes having lateral zigzag flanges which overlap and contact with each other. He might have thereafter filed divisional applications covering the other disclosed forms. This, however, was not done. His representatives now attempt to obtain the benefit of the other forms, known as figures 3 and 5, by way of this reissue application. We are of the opinion this may not be done. "To hold that now a reissue can be made would be to hold that a result can be accomplished by reissue which could not have been accomplished under the original application." In re Hamilton, Deceased, 37 F.(2d) 758, 759, 17 C. C. P. A. (Patents) 833; Application of Ball-man et al., 57 App. D. C. 146, 18 F.(2d) 188.

For these reasons, we are of opinion the decision of the Board of Appeals should be, and it is hereby, affirmed.

Affirmed.