**BETTER PACKAGES, Inc., v. DERBY SEALERS, Inc., et al.**

**No. 460 Civil.**

District Court, D. Connecticut.

March 19, 1941.

124

Pullman & Comley, of Bridgeport, Conn., and Moses & Nolte, by Edmund Quincy Moses, and Thornton F. Holder, all of New York City, for plaintiff.

Rockwell and Bartholow, by Edmond M. Bartholow, all of New Haven, Conn., and William F. Healey, of Derby, Conn., for defendants.

HINCKS, District Judge.

This is an action brought charging an infringement of six patents. Of these, one patent, viz., No. 2,000,536, was withdrawn, the plaintiff consenting that judgment with costs might be entered against it with respect to this patent. Another patent in suit is reissue No. 19,756. As to this, the defendants have raised, as a defense, a charge of invalidity arising from laches in filing the application for an earlier reissue, upon which No. 19,756, now in issue, was based. Since this defense, if sustained, would dispose of the entire controversy as to No. 19,756, the court entertained and allowed a motion to sever the issues raised by this defense and now the parties having been fully heard upon this issue thus severed, I come to the following

Finding of Facts.

1. The original patent, No. 1,638,815, issued on August 9, 1927, and shortly thereafter was assigned to the plaintiff herein, which at all times thereafter was the owner thereof and of the two reissues thereof successively allowed and issued.

2. In 1927, the plaintiff brought suit on No. 1,638,815 against one Keck in the Southern District of Ohio, Western Division, and on January 2, 1929, a memorandum of decision was entered finding claims 22, 24 and 27 of said patent invalid. This decision was reduced to a decree on April 25, 1929, from which no appeal was taken.

3. The patent litigation in Ohio was conducted in the plaintiff's behalf by the firm of Hammond and Littell. At the time of the trial Mr. Hammond was incapacitated by illness, but Mr. Littell actively participated. Mr. Hammond died in April, 1929; Mr. Littell is still living, a resident of New York, but was not called as a witness in this matter. By inference from the foregoing and other items of testimony, I find that the plaintiff received actual notice of the entry of the decree in the Ohio proceedings within a few days after its entry.

4. The patentee, who was at all times mentioned herein a principal officer of the plaintiff and in charge of its patent interests, was informed of said decision early in January. Toward the end of February, 1929, he went abroad on other patent business pertaining to the plaintiff, remaining abroad until September 1, 1929. Between the time in January when informed of the Ohio decision and his departure for Europe his time was much occupied.

5. Not until August 21, 1931, did plaintiff file its application for the first reissue (No. 18,322) of the original patent, No. 1,638,815. In this reissue the claims found invalid by the Ohio court were either removed or amended; it is agreed that no claims of the original patent were broadened by this reissue.

6. After the decision on the original patent in January, 1929, the plaintiff made some effort looking to a recovery against the defendant Keck upon the claims held valid and infringed in said decision, but never entered any disclaimer of the claims of the original patent which had been held invalid, nor took any action whatsoever in respect of a reissue thereof until as stated in the next paragraph.

7. After the entry of the Ohio decree, plaintiff brought no further action under the original patent until July, 1930, when it sued the Louis Link Company upon the original patent and several other patents.

At a later stage in this action the first reissue, No. 18,322, was substituted for the original patent and became the subject matter of the resulting decree. Better Packages v. L. Link & Co., 2 Cir., 74 F.2d 679. The plaintiff gave no thought to the necessity or advisability of applying for the first reissue until stimulated by the contents of the answer to the complaint on the original patent in the Link suit.

## Conclusions of Law.

1. The first reissue is invalid because of unreasonable delay in making application therefor occurring after the plaintiff had the notice carried by the Ohio decree of the defect in the original patent.

## Comment.

The defendant has urged that the plaintiff's apparent acquiescence in the Ohio decree followed by its failure to disclaim, made the patent wholly void under the doctrine of Ensten v. Simon, Ascher & Co., 282 U.S. 445, 51 S.Ct. 207, 75 L.Ed. 453, and that a patent thus voided is an insufficient basis for a reissue. I doubt whether this reasoning can be sustained. Under the doctrine of Triplett v. Lowell, 297 U.S. 638, 56 S.Ct. 645, 80 L.Ed. 949, even after the Ohio decree holding certain claims of the original patent to be invalid, the patent still had enough vitality to support another infringement suit which might have resulted in a decree in conflict with that theretofore rendered in Ohio. Indeed, I read that decision to mean that another suit might be brought upon the claims found invalid in the Ohio decree at any time thereafter during the life of the patent for damages not barred by the applicable statute of limitations. This being so, notwithstanding the absence of a disclaimer of the claims found invalid in the Ohio decree, it would appear to me that the patent also would have had sufficient vitality to support a reissue, if the requirements of a reissue had been present.

However, I find myself at the goal which is the defendant's objective by what seems to me a more direct path of reasoning. For I find the reissue invalid not for failure to disclaim, but rather because of laches in connection with the application therefor. And to explain the basis for my holding, I return to the decision of Miller v. Brass Co., 104 U.S. 350, 26 L.Ed. 783, which seems to be the starting point of most discussion on the subject of reissues.

It is true, of course, that the holding in the Miller case was confined to broadened reissues. As to these, its holding is fundamental in at least one respect, viz., promptly upon the discovery of the "inadvertence, etc.", which is the basis for the reissue, the application therefor must be made without unreasonable delay. Definitely the so-called "two-year rule" of the Miller case which has occasioned so much discussion does not imply that the patentee has a breathing space of two years or any shorter period; it means rather that the presumption of a dedication to the public of everything disclosed but not claimed begins when the original patent issues and continually gathers weight until after two years the dedication to the public can be revoked by a reissue only on clear and convincing evidence of circumstances which extenuate the delay. And where, as in the Miller case, the inadvertence which is the occasion of the reissue is apparent on the face of the patent, the patentee must make his application promply even though the patent is less than two years old when the defect is discovered. It may perhaps be so that the allowance of a reissue applied for within the two-year period is prima facie evidence of its validity. But even so, the decision makes it plain, I think, that a defendant sued upon a reissue, even a reissue applied for well within the two year period, may show if he can lack of diligence (a) in discovering the inadvertence which was its occasion, and (b) in thereafter making the application.

The Miller case also contains dicta relating to narrowed reissues. But before I discuss these dicta I wish first to point out what after all is perfectly obvious. The narrowed reissue, unlike the broadened one, does not involve the revocation or nullification of an apparent dedication to the public. Instead it involves a restriction of the scope of the invention apparently claimed. And the vice of claims originally too broad, which are subsequently narrowed by reissue, is consequently quite different from that inherent in claims originally narrow and later broadened. For the claim is but a written assertion of monopoly. And if the scope of the monopoly thus asserted is subsequently narrowed by a reissue, the public has been harmed only to the extent to which it has been frightened off the relevant area by patentee's excessive pretensions. Thus the nature of a narrowed reissue is different only in degree

from that of a disclaimer. By a disclaimer the patentee generally concedes that one entire claim, or more, transcended the area of his proper monopoly; by a narrowed reissue he may concede that as to a given claim only part of the asserted scope thereof was excessive. In Ensten v. Simon, Ascher & Co., supra, [282 U.S. 445, 51 S. Ct. 209, 75 L.Ed. 453], the court emphasized the need for promptness in filing disclaimers by saying: "By the assertion of his apparent monopoly he may deter others from legitimate action and seriously prejudice the public."

This observation is not at all in conflict with the assertion in Mahn v. Harwood, 112 U.S. 354, 5 S.Ct. 174, 179, 6 S.Ct. 451, 28 L.Ed. 665, that in cases where the original claim is too broad, "the public interest is promoted by the change," to a narrowed claim. To be sure, if the public domain is encumbered by the assertion of an overextended monopoly, it is in the public interest that so much of the monopoly as is excessive should be surrendered by disclaimer or narrowed reissue. But that is not to condone the excessive dimensions of the original claim or unreasonable delay in making the correction which recognizes the right of the public to graze in the field erroneously claimed as a private preserve. Altogether it is abundantly plain that in its essential nature and effect the narrowed reissue is a limited disclaimer and logically should be subject to the rules applicable to disclaimers.

This broad conclusion on examination appears wholly consistent with the dicta of Miller v. Brass Co., supra. There the court, by way of contrast with broadened reissues, said [104 U.S. 355, 26 L.Ed. 783]: "The correction of a patent by means of a reissue, where it is invalid or inoperative for want of a full and clear description of the invention, cannot be attended with such injurious results as follow from the enlargement of the claim. And hence a reissue may be proper in such cases, though a longer period has elapsed since the issue of the original patent."

By this I think the court meant merely to observe that a change whereby members of the public are admitted to commons from which they theretofore had been excluded by extra-legal pretensions is less painful and causes less dislocation than their ejectment from a domain upon which they had settled and taken roots under claim of right. And bearing in mind that in all reissues, broadened and narrowed, diligence, and conversely delay, has two phases, (1) that relating to the discovery of the inadvertence, and (2) that relating to the filing of the application after the discovery, it appears to me wholly reasonable to construe the reference in the passage just quoted to "a longer period" as directed particularly to the period within which occurs the discovery of the inadvertence giving rise to a narrowed reissue. So construed the dictum is wholly compatible with the public interest, fair to the exigencies which confront the patentee, and consistent with the law relating to disclaimer.

For more often than not the patentee may not discover the need for a narrowed reissue until his patent is tested by an infringement suit. Then not infrequently the industry of defendant's counsel will uncover items of prior art overlooked by proceedings in the Patent Office which are necessarily ex parte. It is scarcely fair to charge a patentee with laches for failure to prolong his research after the patent issues with its prima facie presumption of validity. And even if inadvertently he has asserted a claim to a monopoly broader than that to which he is justly entitled, data from the prior art having the effect of limiting his pretensions is as available to the public as to the patentee. And so it is that generally in cases in which the inadvertence which is the occasion for the reissue is not apparent on the face of the patent—and this is perhaps usually true in cases of narrowed reissues—an imputation of laches will not arise until the discovery of the inadvertence. And generally the discovery results from activities attendant upon litigation, especially when a decree of invalidity results.

Recognition of this distinction between diligence in the discovery of the inadvertence and diligence thereafter in applying for the reissue is thus not inconsistent with the dicta of the Miller case. Furthermore, it brings the law relating to narrowed reissues into harmony with that controlling disclaimers. As was said in the Ensten case, quoting from Robinson on Patents: "Delay begins whenever the patentee becomes aware that he has claimed more than he has invented or described. In cases where the excess is not apparent at once upon the inspection of the patent by the patentee, the allowance of his claim by the patent office raises such a presumption in

its favor that he may rely on its validity until a court of competent jurisdiction decides that it is broader than his real invention." And the same distinction is fully supported by a multitude of cases where a long delay in the discovery of the inadvertence was disregarded on the issue of laches. See, for example, Fehr v. Activated Sludge, 7 Cir., 84 F.2d 948; Electrical Accumulator Co. v. New York & H. R. Co., C.C., 50 F. 81; Weiss v. R. Hoe & Co., 2 Cir., 109 F.2d 722; Railway Engineering Equipment Co. v. Oregon Short Line R. Co., 10 Cir., 79 F.2d 469; France Mfg. Co. v. Jefferson Electric Co., 6 Cir., 106 F.2d 605.

█ This brings us to consider the effect of a decree of invalidity upon one or more claims of an original patent. After such a decree, must the patentee promptly move for a curative reissue under pain of being thereafter barred from that right?

If the patentee acquiesced in the adverse decision and yet fails to move promptly for a reissue, he is indeed barred. Such was the holding in Ensten v. Simon, Ascher & Co., supra, in a disclaimer case. There the court said: "When the District Court in Ohio declared claim 2 invalid the owner of the patent might have appealed to the Circuit Court of Appeals within thirty days and thus secured an early determination of his rights. He did not choose this course but continued to hold himself out as possessor of the sole right to 'make, use and vend' under the rejected claim, for nearly two years. Then he abandoned it. He made no effort promptly to vindicate what he had asserted nor did he surrender it. Thus he failed to earn the offered exemption and now he may not complain." My comment above will show that in principle the same observation has application here, and I so hold.

█ But of course the patentee may suffer an adverse decision and yet fail to acquiesce. In such a case, if he would save his right to seek a reissue, I think he must at least appeal. As we have seen, it was so held in respect of the right of disclaimer in the Ensten case where this further was said: "He deliberately failed to defend his assertion of right by appealing. He has been guilty of unreasonable delay and has not brought himself within the beneficent provisions of the statute." Thus, very naturally, a failure to appeal an adverse decree is treated as the equivalent of acquiescence. On this point also I find no case holding to the contrary.

█ But what if a decree of invalidity upon the original patent is affirmed on appeal? May the patentee proceed with further litigation in other circuits to develop an application for certiorari without having the time thereby consumed charged against him as an unreasonable delay in making later an application for reissue? On this point there appears to be a conflict of authority. In Motion Picture Patents Co. v. Laemmle, D.C., 214 F. 787, the court, relying on the absence of a personal estoppel against the patentee resulting from conduct effective to injure the position of the defendant, sustained a reissue granted under such circumstances. In Milloy Electric Co. v. Thompson-Houston Electric Co., 6 Cir., 148 F. 843, certain claims of the original patent, issued in 1893, had first been held invalid by the Circuit Court of Appeals for the Second Circuit (Thomson-Houston Electric Co. v. Hoosick Ry. Co., 82 F. 461) in July, 1897. The application for the reissue was filed in September, 1900, and the intervening period had been occupied with litigation elsewhere. Although the court construed the claims of the reissue as narrowed claims, it held [148 F. 846]: "We cannot think that a patentee may thus experiment with his patent. On the contrary, we think that, when the grounds are disclosed for thinking there may be an error or mistake, he is bound in duty to the public to correct it by obtaining a reissue or to adhere to his original patent; and, if he declines to correct it, he should be deemed to be standing upon it as the measure of his right. A different doctrine would go far to defeat the object of the rule which requires the patentee to define his invention with such distinctness that other inventors, and the public as well, may know its scope and limitations. And it is not alone those persons who are shown to have taken action upon the faith that the patent defines the character of the invention who may raise the objection to a change in its claims which makes it cover other ground than that claimed before. The rule does not rest upon the ground of an estoppel in favor of particular persons."

Faced with this conflict, I hold with the rule of the Milloy Electric Company case. The rule seems to me sound in principle. It properly brings the law applicable to narrowed reissues into harmony with the law relating to disclaimers. For if a pat-

128

entee, after suffering a decree of invalidity in one circuit, affirmed on appeal, should litigate elsewhere, again encounters a final decree of invalidity upon the same claims, and thereafter attempts to disclaim, the period of delay in disclaiming would include the time spent in the second litigation. As was said in Triplett v. Lowell, supra [297 U.S. 638, 56 S.Ct. 649, 80 L.Ed. 949]: "The patentee is free to preserve some of the claims of his patent by disclaiming others which have been held invalid, but the statute does not force him to pay that price in order to save them. He may relinquish the privilege of disclaimer, and proceed to relitigate, in another court, the claims which have been declared to be invalid, *but at the risk of loss in that court of the other claims of the patent even though valid,* if it likewise holds invalid the previously adjudicated claims." And in such a case, if claims not theretofore held invalid are attacked for failure seasonably to disclaim what was held to be invalid, the court will "be called upon to apply the disclaimer statute and to decide whether the patentee, under all the circumstances presented, has unreasonably neglected or delayed to enter a disclaimer of the claim of whose invalidity he had notice in the prior suit." Triplett v. Lowell, supra. And if a tardy disclaimer filed in advance of a subsequent suit is insufficient to sterilize the taint deriving from an earlier decree of invalidity, as was held in the Ensten case, a fortiori a complete absence of disclaimer before the subsequent suit would not have better served the patentee.

Moreover the rule of personal estoppel adopted in the Laemmle case is not in harmony with later pronouncements in this circuit. Cf. Otis Elevator Co. v. Atlantic Elevator Co., Inc., 2 Cir., 47 F.2d 545.

■ Applying the law to the facts of this case, and even assuming—what is not necessarily so, the point not having been developed on this record—that the defect in the original patent was such that the plaintiff was not remiss for its failure to discover it before the judge's decision in the Ohio case, the chronicle of its conduct thereafter requires the finding of unreasonable delay constituting laches such as to invalidate the reissue. Surely the plaintiff is chargeable with notice of the Ohio decree to which it was a party notwithstanding the testimonial protestations of its officer, quite apart from the actual notice found to exist. The mere fact that thereafter

plaintiff's officer in charge of its patent business was busy at home and abroad on other matters is inadequate excuse for the ensuing delay. Moreover, the evidence shows that the plaintiff spent some time and effort looking to a recovery on the claims held valid in the Ohio decree. If it had been equally diligent in its concern for the public interest and had seasonably instructed its counsel to consider and initiate a disclaimer or an application for reissue, the case would have been different. As it is, the case is no stronger for the patentee than the Ensten case where inaction for the seven months following a decree of invalidity, not appealed from, was held to constitute unreasonable delay in disclaiming. See also Better Packages v. L. Link & Co., 2 Cir., 74 F.2d 679, where the delay was even less.

■ 2. The first reissue being invalid, the second reissue here in suit is necessarily invalid also.

These conclusions will be embodied in the decree to be entered at a later stage after trial on the merits of the other severed issues.