## GENERAL RADIO CO. v. ALLEN B. DU MONT LABORATORIES, Inc.

### No. 7749.

Circuit Court of Appeals, Third Circuit.

Argued Oct. 9, 1941.

Decided May 12, 1942.

Rehearing Denied June 3, 1942.

Reconsideration of Petition for Rehearing Denied June 12, 1942.

Samuel E. Darby, Jr., of New York City (Herbert LeRoy Cohen, of Wilmington, Del., and Floyd H. Crews, of New York City, on the brief), for appellant.

R. Morton Adams, of New York City (Pennie, Davis, Marvin & Edmonds and Baldwin Guild, all of New York City, and E. Ennalls Berl, of Wilmington, Del., on the brief), for appellee.

Before MARIS, JONES, and GOODRICH, Circuit Judges.

MARIS, Circuit Judge.

The defendant has appealed from a judgment of the District Court for the District of Delaware holding Bedell reissue patent No. 20,945 valid as to certain claims and infringed by the defendant. The defendant contends that the reissue patent in suit is invalid because of anticipation by or want of invention over the prior art and that it is also invalid because of unreasonable delay in making application for the reissue and because it was improperly granted under the reissue statute.

The invention of the patent relates to an improvement in cathode-ray oscillographs. The invention and its place in the art are fully described in the opinion of the district court, 38 F.Supp. 495, and that detailed description need not be repeated here. It is sufficient to say that a cathode-ray oscillograph is an instrument which is employed to make visible to the human eye for examination and study the characteristics of periodic electrical quantities. A tube is used in which are located a cathode, an anode, two pairs of deflection plates arranged on axes at right angles to each other and a fluorescent screen. When the cathode is activated by an electrical current it ejects a stream of electrons. Most of them strike the anode but a slender ray of electrons passes through a small hole in the anode and strikes the fluorescent screen at the other end of the tube making a point of light thereon. This stream of electrons is repelled by a negative charge and attracted by a positive charge. Consequently if a voltage is applied to one of the pairs of deflection plates the cathode-ray will be deflected toward the positive plate and will accordingly strike the fluorescent screen at a point away from its point of original impact.

In operating the oscillograph the periodic electrical quantity to be examined is introduced across one pair of the deflection plates. In ordinary practice the vertical pair is used for this purpose. As this electrical quantity goes through its periodic changes the point of light will be deflected up and down on the fluorescent screen. If the ray is affected only by one pair of deflection plates the point of light will move up and down making a vertical line across the screen. In order, therefore, to produce a wave-shaped curve which may be seen and studied it is necessary to give the point of light a steady horizontal movement also. It must move at a uniform speed from one side of the screen to the other and then instantaneously return and repeat the movement. This is called the "sweep movement" and it is produced by voltage applied to the horizontal set of

deflection plates. In order that the required result may be obtained it is necessary that these plates be charged by what has been described as a sawtooth voltage, i. e., one which increases steadily in one direction and then instantly drops to zero. In the oscillograph disclosed in the Bedell patent this result is accomplished by an oscillator, the basic features of which are a source of current, such as a battery, a condenser, resistances and a discharge tube which acts somewhat like a switch. With a low voltage applied the tube acts like an open switch, i. e. no current can pass, but when the voltage across the horizontal deflection plates rises with the charging of the condenser to some definite point, which may be determined by adjustment, the tube suddenly acts like a closed switch and allows current to pass freely. By means of the oscillator a voltage is produced which is applied to the horizontal deflection plates. As a result the cathode-ray is steadily deflected in a horizontal direction and then instantaneously returned to its first position. This operation is repeated with extreme rapidity. By means of adjustments in the oscillator circuit the frequency of the oscillator can be varied over an extremely wide range.

In operating the oscillograph it is obvious that if the point of light should make only one extremely rapid movement across the screen it would not be visible to the human eye. In order to make a line of light the point must be constantly moving and retracing its path across the screen. It is likewise obvious that in order to make a sharp line the point of light must continue to follow exactly the same path in its successive movements across the screen. This can happen only when the frequency of the oscillator is exactly the same as that of the periodic electrical quantity which is being observed or when it bears a ratio of two or more whole numbers thereto. By careful manual adjustment it is possible to make the two frequencies very nearly the same. But for the best results in the study of many problems absolute synchronism is desirable. The two frequencies must lock in step. It is to the solution of this particular problem that Bedell's patent is directed. His patent discloses that if a small voltage from the electrical quantity under examination is introduced into the oscillator circuit it will have the effect, when the two circuits are close to synchronization, of locking the oscillator circuit in absolute synchronization with the frequency of the periodic quantity being examined.

■ Bedell's original patent for this invention, No. 1,707,594, was issued April 2, 1929, and was assigned to the plaintiff on May 29, 1934. On February 11, 1937, the plaintiff was informed by its counsel that certain of the claims of the patent were probably invalid because they were functional. On August 18, 1937, the application for the reissue patent in suit was filed. The reissue patent was issued on December 13, 1938. With the reissue application Bedell filed an oath in which he conceded that claims 1, 2, 3, 4, 5 and 6 of the original patent were in such terms that they might be construed to cover merely the function instead of the apparatus. It is sufficient for the purposes of this case to consider claim 1, since it is typical of all six. It is as follows:

"In a device of the type described, a cathode-ray tube, two sets of deflecting elements fixed in position with respect to said tube and with respect to each other for deflecting the cathode beam periodically, and means for indicating the curve formed by the deflected beam as stationary."

The cathode-ray tube and the two sets of deflecting plates were admittedly old. Bedell's invention lay solely in what he described in the claim as "means for indicating the curve formed by the deflected beam as stationary." It will be seen that Bedell claimed the function of his invention or the problem which it solved rather than the means by which he solved the problem. That the claims are functional is quite clear. This was in effect conceded by the plaintiff, since, as we have seen, the application and affidavit upon which it relied for reissue contained averments by Bedell that certain of the claims of his original patent might be construed to cover the function instead of the apparatus. It is well settled that a claim which is functional is invalid.[1]

Congress has authorized the reissue in amended form of an inoperative or invalid patent upon certain conditions. One of these is that the error sought to be corrected by the reissue was due to inadvertence, accident or mistake and was made without any fraudulent or deceptive in-

[1] Holland Fur Co. v. Perkins Glue Co., 1927, 277 U.S. 245, 256–258, 48 S.Ct. 474, 72 L.Ed. 868; Gen. Electric Co. v. Wabash Appliance Corp., 1938, 304 U. S. 364, 58 S.Ct. 899, 82 L.Ed. 1402.

tention.[2] This section is implemented by Rule 87 (d) of the Patent Office, 35 U.S. C.A. Appendix, which requires that applicants for reissue file with their petitions a statement on oath "Particularly specifying the errors which it is claimed constitute the inadvertence, accident, or mistake relied upon, and how they arose or occurred." In the oath which accompanied the application for reissue in the present case Bedell averred:

"Deponent explained his invention to his patent solicitors and placed upon them full reliance to draw and file a specification and claims which should fully and adequately protect the same, while not claiming for applicant more than he had a right to claim as new.

"Deponent, however, is now informed and believes that said patent solicitors failed to understand the true nature of applicant's invention and to recognize the various aspects and embodiments thereof, and the metes and bounds thereof, and that said solicitors, through inadvertence, accident or mistake and without any fraudulent or deceptive intention, included in said application claims 1, 2, 3, 4, 5, and 6 of said original patent which are in such terms that they may be construed to cover merely the function instead of the apparatus, and obtained allowance thereof, whereby applicant appears to claim more than he had a right to claim as new; * * *."

■ It will be seen that this was simply an averment of inadvertence, accident or mistake in the language of the statute, without any specification of supporting circumstances. Furthermore it is belied by the patent itself, the specification of which disclosed clearly and in detail the various aspects and embodiments of Bedell's invention and the metes and bounds thereof. There is in this case no suggestion of anything in the prior art having been overlooked, or that the specification was defective or insufficient, or that the claims were drawn to cover an invention to which Bedell was not entitled. The specification of the original patent clearly discloses Bedell's concept and the means he employed to solve his problem. It passes belief that Bedell's patent solicitors did not understand the invention which they described so well in the specification. It is much more rational to conclude, as we do, that they drew the functional claims with the intention of covering any and all means which might be devised in the future to solve the problem which Bedell's particular means solved.[3] Since the law does not permit the making of a functional claim this action of Bedell's solicitors, if it can be considered an error, was clearly no more than an error of judgment. But an error of judgment, even though made by the solicitor and not by the patentee himself, is binding upon the patentee and may not be rectified by a reissue patent.[4]

■ We are not to be understood as holding that in no case may a reissue patent be granted where the error which makes the original patent inoperative or invalid is the insertion of a functional claim. It may be that such a claim could be inserted through inadvertence in the statutory sense. Thus if the plaintiff had presented evidence that the functional claims were inserted in place of other claims uninten-

---

[2] "Whenever any patent is wholly or partly inoperative or invalid, by reason of a defective or insufficient specification, or by reason of the patentee claiming as his own invention or discovery more than he had a right to claim as new, if the error has arisen by inadvertence, accident, or mistake, and without any fraudulent or deceptive intention, the commissioner shall, on the surrender of such patent and the payment of the duty required by law, cause a patent for the same invention, and in accordance with the corrected specification, to be reissued * * *." R.S. § 4916, 35 U.S.C.A. § 64.

[3] In Heidbrink v. Charles H. Hardessen Co., 7 Cir., 1928, 25 F.2d 8, certiorari denied, 278 U.S. 629, 49 S.Ct. 29, 73 L.Ed. 548, Judge Evans, speaking of an attempt to cure the error of a functional claim by reissue, said at page 10 of 25 F.2d: "If the applicant *deliberately* and *skillfully* drafted his claims so as to cover any means which any one ever may discover of producing the result, could it be said that his action was inadvertent or accidental? Accidental or inadvertent action cannot be predicated upon conduct properly characterized as deliberate or designed."

[4] Dobson v. Lees, 1890, 137 U.S. 258, 11 S.Ct. 71, 34 L.Ed. 652; Arnheim v. Finster, C.C.N.Y.1885, 24 F. 276; Grand Rapids Show Case Co. v. Baker, 6 Cir., 1914, 216 F. 341; In re Murray, Cust. & Pat.App., 1935, 77 F.2d 651; Cf. Perfection Disappearing Bed Co. v. Murphy Wall Bed Co., 9 Cir., 1920, 266 F. 698, certiorari denied, 254 U.S. 652, 41 S. Ct. 149, 65 L.Ed. 458.

tionally through an inadvertent error of Bedell's patent solicitors or their clerk the commissioner could have found that the error was due to inadvertence, accident or mistake.[5] But we find no such contention made here nor do the contents of the file wrapper disclose that any such facts were presented to the commissioner. We are satisfied that an applicant who wishes to obtain the benefits of the reissue statute must make a specific showing of the circumstances from which the conclusion of inadvertence, accident or mistake may be drawn by the commissioner and that he does not comply with the statute by a mere sworn averment couched in the statutory terms or by a showing that the patentee or his solicitors committed an error of judgment.

■■ Whether the error relied upon in support of an application for reissue was due to inadvertence, accident or mistake is of course a question of fact for determination by the commissioner.[6] By granting the reissue patent the commissioner must be deemed to have found the facts in favor of the applicant. However, where there is an entire absence of evidence, it is the duty of the court to review and correct the error.[7] It may possibly be that in oral interviews, which are not reported in the file wrapper and are therefore not in the record before us, the commissioner did receive evidence which was sufficient to support his finding. While there is not suggestion in the record that this was so, nevertheless the record does not exclude the possibility.

■■ But even assuming that the commissioner of patents had before him facts not disclosed in the file wrapper[8] which would have justified a finding that the insertion of the functional claims was not deliberate but was due to inadvertence, accident or mistake, it is clear that the grant of a reissue patent upon an application made more than eight years after the original issued was improper. Whether the functional claims were drawn deliberately and with the shrewd attempt to gain for the patentee more than his invention justified, or because of an error of judgment on the part of the patent solicitors or through inadvertence, accident or mis-

take, the error, if such it may be called, was apparent upon the face of the patent from the very day it issued. It has long been settled that due diligence must be exercised in discovering a mistake in a patent and that an unreasonable delay in making application for reissue invalidates the reissue patent. Miller v. Brass Co., 1881, 104 U.S. 350, 26 L.Ed. 783. In that case the court said at page 351 of 104 U.S.: "But there is another grave objection to the validity of the reissued patent in this case. It is manifest on the face of the patent, when compared with the original, that the suggestion of inadvertence and mistake in the specification was a mere pretence; or if not a pretence, the mistake was so obvious as to be instantly discernible on opening the letters-patent, and the right to have it corrected was abandoned and lost by unreasonable delay. The only mistake suggested is, that the claim was not as broad as it might have been. This mistake, if it was a mistake, was apparent upon the first inspection of the patent, and, if any correction was desired, it should have been applied for immediately."

The original patent in our case issued April 2, 1929. At that time it should have been apparent to the patentee and his solicitors that the claims were so broad as to be invalid because they described the problem rather than the means invented by the patentee for solving it. Again, when the plaintiff acquired the original patent by purchase on May 29, 1934, the functional nature of the claims was obvious to all who took the trouble to read them and the invalidity of the patent should, therefore, have been clear to anyone with even a rudimentary knowledge of patent law. Plaintiff was advised by its counsel of the invalidity of the patent on February 11, 1937, but it was not until six months later on August 18th of that year, that it filed its application for reissue. The reissue patent in suit was granted December 13, 1938.

■■ We conclude that the significant date is not that upon which the plaintiff was informed by counsel of the patent's invalidity but rather April 2, 1929, when the patent with its obviously invalid claims

---

[5] Moneyweight Scale Co. v. Toledo Computing Scale Co., 7 Cir., 1913, 187 F. 826.

[6] Mahn v. Harwood, 1884, 112 U.S. 354, 5 S.Ct. 174, 6 S.Ct. 451, 28 L.Ed.

[7] Union Switch & Signal Co. v. Louisville Frog, etc., Co., 6 Cir., 1934, 73 F.2d 550.

[8] Fehr v. Activated Sludge, 7 Cir., 1936, 84 F.2d 948.

issued. The question therefore is whether a delay of more than eight years in making application for reissue was reasonable. Because of varying circumstances there can of course be no fixed rule as to the time within which an application for reissue must be made. What is a reasonable time under the circumstances is to be determined by the court. Topliff v. Topliff, 145 U.S. 156, 171, 12 S.Ct. 825, 36 L.Ed. 658. We have no doubt that a delay of more than eight years under the circumstances of this case was unreasonable.[9] With but few exceptions the cases upon the question are cases in. which the applicant seeks to broaden his claims. But is is clear that the reason for requiring prompt action may be just as great in a case where the patentee seeks to narrow his claims as where he seeks to broaden them. In the latter case he may have misled the public into the belief that the unclaimed portion of the invention was dedicated to the public for its use. In the former case by his unwarranted claim of monopoly he has deprived the public of the unrestricted use of that which he has claimed. In effect, what Bedell .and his assignee, the plaintiff, did in this case was to maintain a "no trespassing" sign for eight years upon property which was not theirs. The public has an interest in seeing that such a situation is corrected promptly.[10] The privilege of correcting an acknowledged error in the original patent may in the public interest be validly conditioned upon the patentee proceeding promptly.

We conclude that the reissue patent was improperly granted and that the district court erred in not holding it invalid on that ground. This conclusion makes it unnecessary to consider whether. the patent was anticipated or disclosed invention over the prior art.

The judgment of the district court is reversed.

## On Petition for Rehearing.

Before BIGGS, MARIS, JONES, and GOODRICH, Circuit Judges.

MARIS, Circuit Judge.

The plaintiff has filed a petition for rehearing. In support of the petition it urges that we erred in holding claims 1 to 6 of the original Bedell patent invalid. Its argument is that these were combination claims and that the use of the word "means" limited by a statement of function has long been recognized as the proper method of stating an element of a combination claim.

The plaintiff finds itself upon the horns of a dilemma. If the claims in question were invalid, under our ruling the plaintiff must fail. On the other hand if they were valid there was no error in the original patent which justified its reissue and the reissue patent was invalid for that reason.

That the claims in question were invalid seems clear even in the light of the plaintiff's argument. The novel feature of the combination, the connection between the two circuits, is not described in terms of its particular function, as, for example, means for introducing a small voltage from the electrical quantity under examination into the oscillator circuit, but rather in terms of the whole problem which the invention solved, that is, as "means for indicating the curve formed by the deflected beam as stationary." There is an obvious difference between describing a well known element in a combination in terms of its particular well known function and describing a single element in a combination in terms of the result achieved by the whole combination. It was doubtless this distinction which the plaintiff had in mind when it surrendered the original patent and procured Bedell to make application for reissue upon the ground that claims 1 to 6 claimed more than he had a right to claim as new.

But even if the validity of the claims of the original Bedell patent should be conceded the plaintiff's suit must likewise fail since it is not brought upon the original patent, which has been surrendered, but upon the reissue patent which was issued in place of it. The latter could lawfully have been issued under the statute only if the patentee had erroneously claimed more than he had

[9] As illustrative of the delays which the Supreme Court has ruled to be unreasonable as a matter of law see the cases cited in Topliff v. Topliff, 145 U.S. 156, 167–170, 12 S.Ct. 825, 36 L.Ed. 658. See, also, Radio Condenser Co. v. Coe, 1934, 64 App.D.C. 119, 75 F.2d 523; In re Seabury, Cust. & Pat.App., 1939, 108 F.2d 232.

[10] Pelzer v. Meyberg, C.C.Cal., 1899, 97 F. 969. For an illuminating discussion of the application of the doctrine of laches when what is sought is to narrow the claim of the original patent see the opinion of Judge Hincks in Better Packages v. Derby Sealers, D.C.Conn.1941, 43 F. Supp. 123.

a right to claim as new and if the error had arisen by inadvertence, accident or mistake and without any fraudulent or deceptive intention. It is obvious, as has already been suggested, that if the claims of the original patent were valid there was no error in that patent which would provide a basis of invoking the reissue statute. Consequently if the plaintiff's present contention is sound the reissue patent was wholly void as beyond the power of the Commissioner to grant.

The petition for rehearing is denied.